**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KIMBERLY ANN B.,

                                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 5:24-CV-01321
                                                     (PJE)
                                    Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

Olinsky Law Group                        HOWARD D. OLINSKY, ESQ.
250 South Clinton Street- Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration           VERNON NORWOOD, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Kimberly Ann B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3) seeking review of a decision from the Commissioner of the Social

Security Administration ("the Commissioner") denying her applications for disability

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18. *See* Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

insurance benefits ("DIB") and supplemental security income ("SSI").  *See* Dkt. No. 1. Plaintiff moved for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 14.  The Commissioner moved for the decision to be affirmed. *See* Dkt. No.17.[3]  Plaintiff filed a reply.  *See* Dkt. No. 18.  For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I.  **Background**

On April 15, 2022, plaintiff filed a Title XVI application for SSI, alleging a disability onset date of January 28, 2021.  *See* T. at 242-48.[4]  On June 23, 2022, plaintiff filed Title II and Title XVIII applications for DIB, alleging a disability onset date of January 9, 2019. *See id*. at 249-55.  On November 23, 2022, the Social Security Administration ("SSA") denied plaintiff's claims.  *See id.* at 161-66.  Plaintiff sought reconsideration, which the SSA denied on January 10, 2023.  *See id.* at 167-76.  Plaintiff appealed and requested a hearing.  *See id*. at 177-78.  On January 9, 2024, a hearing was held before Administrative Law Judge ("ALJ") Jennifer Smith.  *See id.* at 34-60.  During the hearing, plaintiff amended her disability onset date to February 2, 2021.  *See id*. at 37-38.  On January 19, 2024, the ALJ issued an unfavorable decision.  *See id.* at 12-33.  On September 12, 2024, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See id*. at 1-6.  Plaintiff commenced the instant action on October 30, 2024.  *See* Dkt. No. 1.

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 9.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

### B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

### III.  **The ALJ's Decision**

The ALJ determined that plaintiff "meets the insured status requirements of the Social Security Act through March 31, 2024." T. at 17. Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff had "not engaged in substantial

gainful activity since February 2, 2021, the amended alleged onset date." *Id*.  At step two, the ALJ found that plaintiff "has the following severe impairments: lumbar degenerative disc disease, asthma, allergic rhinitis, chronic sinusitis, type II diabetes, and overactive bladder."  *Id*. at 18.  At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id*. at 19.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> to perform light work[5] as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment; claimant should not climb ladders, ropes, and scaffolds, balance as defined in the [Selected Characteristics of Occupations ("SCO")], kneel, crouch, and crawl; claimant can occasionally climb ramps and stairs and stoop; the claimant should have no concentrated exposure to respiratory irritants such as dust, odors, fumes and gases, wetness, extreme hot and cold temperatures, and humidity; claimant is unable to perform work that is done outdoors and work that is done with animals; claimant should change positions during ordinary breaks and lunch hour; and claimant should be allowed to go to the bathroom four times a day in addition to ordinary breaks and lunch hour, and each bathroom break should last no longer than five minutes.

---

[5] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

*Id*. at 19.  At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work."   *Id*. at 26.   Before reaching step five, the ALJ concluded that the "[t]ransferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  *Id*. at 27.  At step five, the ALJ determined that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id*.  The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from February 2, 2021[,] through the date of this decision."  *Id*. at 28.

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for two reasons.  *See* Dkt. No. 14 at 14-21.  First plaintiff argues that the ALJ failed to "provide a valid rationale for rejecting [her] testimony in accordance with 20 C.F.R. §§ 404.1529, 416.929[,] and SSR 16-3p."  *Id*. at 14-19.  Plaintiff contends that the evidence of record supports her subjective reports of symptoms and limitations.  *See id*. at 16-18.  Second, plaintiff asserts that the ALJ erred in rejecting Rita Figueroa M.D.'s medical opinion because the limitations described by Dr. Figueroa are consistent with the other evidence of record.  *See id*. at 19-21.  Plaintiff asserts that although Dr. Figueroa only examined her one time, the ALJ should have relied on Dr. Figueroa's opinion concerning pulmonary irritants because "the ALJ disregarded the opinions of the state

agency medical consultants regarding environmental limitations." *Id*. at 20 (citing T at 26).

The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. *See* Dkt. No. 17 at 8-15. The Commissioner argues that the ALJ's RFC determination is supported by the opinions of Dr. Rosenthal and Dr. Schmidt-DeYoung and the state agency medical consultative examiners, as well as plaintiff's lumbar spine imaging and unremarkable physical examination reports. *See id*. at 8-9. In response to plaintiff's arguments, the Commissioner claims that the ALJ "determined that Plaintiff should avoid concentrated exposure" to pulmonary irritants even though "[p]laintiff's allergy and asthma medical sources consistently observed that her examination findings were unremarkable." *Id*. at 10 (citing T. at 19, 484, 492, 497, 658). Similarly, the Commissioner asserts that the ALJ correctly rejected Dr. Figueroa's opinion because plaintiff reported to Dr. Figueroa that her condition was controlled by medication, and "symptoms that can be reasonably controlled by medication are not disabling." *Id*. (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)).

As to plaintiff's testimony, the Commissioner asserts that the ALJ "carefully review[ed] the evidence of record . . . [and] determined that Plaintiff's allegations regarding the intensity, persistence, and functional limitations of her back pain were not entirely consistent with the evidence of record." Dkt. No. 17 at 12 (citing T. at 25). The Commissioner contends that "[s]ince Plaintiff's allegations of disabling back pain suggested a greater restriction than demonstrated by the objective medical evidence alone, the ALJ properly considered other factors regarding Plaintiff's allegedly disabling back pain, including the type of medication she took for pain and the observations of

medical sources." *Id*. at 13 (citing T. at 20-25).  Finally, the Commissioner argues that plaintiff is asking the Court to reweigh the evidence in her favor.  *See id*. at 14-15.

In reply, plaintiff argues that the Commissioner's arguments amount to a post-hoc rationalization because "[t]he ALJ does not emphasize or even cite to taking over-the-counter medications as a reason for rejecting Plaintiff's testimony."  Dkt. No. 18 at 1. Similarly, plaintiff states that the Commissioner's reliance on her imaging studies and back examinations ignores other favorable evidence demonstrating back limitations.  *See id*. at 2 (citing Dkt. No. 14 at 16-18).  Finally, plaintiff argues that the Commissioner's "assertion that Dr. Figueroa's examination did not support her opinion is contrary to the ALJ's own findings," and "the ALJ does not indicate why Dr. Figueroa's pulmonary limitation was rejected based on the consistency factor analysis."  *Id*. at 4.

### B.  **RFC Determination**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."  *Joseph J. B.*, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))).  "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ."  *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))).  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's

9

capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

1. **Plaintiff's Testimony**

The ALJ noted that plaintiff testified that she cannot work because she suffers from:

> sharp shooting pain, and cannot bend down; that she has lower back pain that shoots into her leg; that she is allergic to more things; that she has a learning disability, and is at a fifth-grade reading level; that she had a lot of help in college, and it took her six years to complete three years of college; that she has an overactive bladder, and has to go every 20 to 30 minutes; that it does not take her long when she has to go; that she still has to go every 45 to 60 minutes with her medications; that she is diabetic, and is constantly looking at her sugar levels; that she constantly needs to sit/stand; that she needs to elevate her feet; that laying down for too long makes her stiff, and she gets a sharp pain; that pelvic exercises have not made her bladder any stronger; and that it is hard for her to sit in a regular chair, because it hurts her back after 20 minutes, and she has to have her feet reclined and stretched out.

T. at 24. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; for the reasons explained in this decision, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 25.

Yet, the ALJ did not explain how she concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were not consistent with the evidence of record. The evidence the ALJ discussed both supports and refutes plaintiff's claims regarding her symptomology and claimed limitations, and it is, therefore, unclear the evidence on which the ALJ relied to form her conclusion. *See* T. at 20-24. For example, the ALJ notes a January 25, 2021, unremarkable physical examination, but in the next paragraph, the ALJ discusses a March 2, 2021, treatment record documenting "mildly antalgic gait, tenderness to palpation of her lumbosacral spine, a restricted and painful lumbosacral spine range of motion; and a positive flip test

11

bilaterally." *Id*. at 20.  Similarly, the ALJ lists a November 2, 2022, consultative internal medicine examination report documenting back pain, limited range of motion, and mobility difficulties, and in the next paragraph, notes other treatment records dated March 10, 2023, April 20, 2023, May 2, 2023, and August 20, 2023, documenting normal musculoskeletal examinations.  *See id*. at 21.

"The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review."  *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-0020 (MAD/DJS), 2023 WL 2863323, at *5 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-0020 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (quoting *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020)) (internal quotation marks omitted).  Without this additional analysis, it is unclear what, if any, inconsistency exists involving plaintiff's testimony, frustrating judicial review.  *See Cartwright v. Comm'r of Soc. Sec.*, No. 19-CV-6543 (FPG), 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) (quoting *Arias v. Astrue*, No. 11-CV-1614, 2012 WL 6705873, at *2 (S.D.N.Y. Dec. 21, 2012) ("[W]here there is conflicting evidence, the ALJ must acknowledge the conflict and explain why 'the conflicting [evidence] is being disregarded.' Because the ALJ did not do so, further administrative proceedings are necessary.")).

### C.  **Medical Opinions**

Under the current standard, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a) (internal citation omitted).  Rather, medical opinions and PAMFs are

evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824,

at \*5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at \*4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at \*4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at \*2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id.* (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id.* (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at \*14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at \*5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at \*4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, \*4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

a. **Dr. Figueroa**

14

Dr. Figueroa is a state agency medical consultant who examined plaintiff on November 9, 2022.  *See* T. at 544-48.  Dr. Figueroa noted that plaintiff reported "lower back pain when walking on heels and toes in left lower back.  Squat 25% and reports lower back pain."  *Id*. at 545.  Diagnostic testing revealed the following: "[c]ervical spine shows flexion 50 degrees, extension 60 degrees, lateral flexion 25 degrees each, and cervical rotation 40 degrees each.  Right knee positive for crepitations . . .  [straight leg raise] positive on left leg at 85 degrees and it was not confirmed in sitting position."  *Id*. at 546.  Dr. Figueroa diagnosed plaintiff with chronic low back pain, degenerative disc disease of the lumbar spine, positive inflammatory arthritis i.e. psoriatic arthritis, and asthma.  *See id*. at 547.  Dr. Figueroa opined that plaintiff has "moderate [limitation] for heavy lifting and carrying.  Moderate to severe limitation for kneeling, squatting, and crawling.  She will have moderate limitation for bending, walking, standing, and twisting.  She should avoid exposure to pulmonary irritants."  *Id*.

The ALJ concluded that Dr. Figueroa's opinion was less persuasive because Dr. Figueroa's opinion was only supported by her single examination of plaintiff and was

> not consistent with the imaging of the claimant's lumbosacral spine, which did not contain any positive findings (Exhibit B6F).  The assessment of the claimant by Dr. Figueroa is also not consistent with the musculoskeletal exam of the claimant that was performed by her primary care physician on May 2, 2023, when the claimant was found to have a normal range of motion (Exhibit B8F).  In addition, the assessment of the claimant by Dr. Figueroa is inconsistent with the opinions that were subsequently rendered by Dr. Rosenthal and Dr. Schmidt-Deyoung (Exhibits B3A, B4A, B7A, B8A).

T. at 26.  The ALJ concluded that " the opinions of Dr. Rosenthal and Dr. Schmidt-Deyoung are more persuasive than the opinion by Dr. Figueroa, because Dr. Rosenthal and Dr. Schmidt-Deyoung, as opposed to Dr. Figueroa, also had the opportunity to review the other evidence of record."  *Id*.

15

The Court concludes that the ALJ's treatment of Dr. Figueroa's opinion is not supported by substantial evidence, and the Court will address the evidence the ALJ relied upon individually.  First, the lumbosacral spine X-ray report annexed to Exhibit B6F states, "The height of the vertebral bodies and intervertebral disc spaces appear to be well maintained.  There is no acute fracture or subluxation.  Impression: No acute fracture or subluxation."   T. at 548.   However, the ALJ did not explain how the x-ray report is inconsistent with Dr. Figueroa's opinion itself.  The x-ray report contains a diagnostic finding without any application to plaintiff's reported symptoms or limitations or any further reference to Dr. Figueroa's opinion.  *See Leslie H. L. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-0150 (SALM), 2021 WL 5937649, at *6 (D. Conn. Dec. 16, 2021) (quoting *Theresa W. v. Comm'r of Soc. Sec.*, No. 20-CV-0704 (LJV), 2021 WL 4324421, at *3 (W.D.N.Y. Sept. 23, 2021)) ("Where the treatment notes available 'generally contain bare medical findings and do not address or illuminate how [plaintiff's] impairments affect [his] physical ability to perform work-related functions[,]' such notes are not sufficient to support an RFC.").

Second, the ALJ does not provide any reasoning for rejecting Dr. Figueroa's opinion that plaintiff should avoid exposure to pulmonary irritants.  *See* T. at 26.  The ALJ notes Dr. Figueroa's opinion regarding pulmonary irritants, but the entirety of the ALJ's analysis addresses plaintiff's back and range-of-motion limitations.  *See id*.; *see also* 20 C.F.R. §§ 416.920c(c)(1)-(2).

Third, the ALJ cites a May 2, 2023, treatment record noting that plaintiff had normal range of motion and "exhibit[ed] no edema or tenderness."  T. at 625.  Although the ALJ characterizes this treatment record as a "musculoskeletal exam," the Court notes that on

May 2, 2023, plaintiff sought treatment for "an acute sinus infection." *Id*. at 624. It is unclear the extent to which plaintiff's musculoskeletal system was examined that day. It appears that plaintiff's range of motion was recorded at that moment in time and not in relation to any of her musculoskeletal conditions. Further, the ALJ does not explain or connect plaintiff's normal range of motion to Dr. Figueroa's opinion that plaintiff was limited in heavy lifting and carrying, kneeling, squatting, crawling, bending, walking, standing, and twisting. *See id*. at 547. Like stated *supra*, the ALJ does not create a "logical bridge" between the evidence and her conclusions. *Alexandria S.*, 2023 WL 2863323 (quoting *Pamela P.*, 2020 WL 2561106, at *4)).

Fourth, the ALJ's reliance on Dr. Rosenthal and Dr. Schmidt-Deyoung's opinions to reject Dr. Figueroa's opinion as to plaintiff's postural limitations is circular and illogical. *See* T. at 25-26. Elsewhere in the decision, the ALJ concluded that Dr. Rosenthal and Dr. Schmidt-Deyoung's opinions, as they relate to postural limitations, were inconsistent with the other evidence of record. *See id*. More specifically, the ALJ concluded that:

> the determination by Dr. Rosenthal that the claimant had no postural limitations and could tolerate unlimited exposure to fumes, odors, dusts, gases, and poor ventilation constitutes an overly optimistic estimate of the claimant's physical ability to perform work-related activities. Similarly, the determination by Dr. Schmidt-Deyoung that the claimant could frequently engage in all postural activities and could tolerate unlimited exposure to hazards such as machinery and heights also constitutes an overly optimistic estimate of the claimant's physical ability to perform work-related activities. These portions of the assessments of the claimant by Dr. Rosenthal and Dr. Schmidt-Deyoung are also inconsistent with all of the information that is now in the record, including the claimant's sworn testimony at the hearing, which supports the placement of greater nonexertional limitations on the claimant.

*Id*. It is unclear – due to a lack of explanation – how the ALJ could rely on Dr. Rosenthal and Dr. Schmidt-Deyoung's postural limitation opinions in one section of the decision and reject them in another. Based on the foregoing, it is unclear upon what evidence the ALJ

17

relied in rejecting Dr. Figueroa's opinion. *See Brian K.*, 2025 WL 18718, at \*4 (quoting *Rivera*, 2020 WL 8167136, at \*14 (quoting *Andrew G.*, 2020 WL 5848776)).

As the Court finds reason to remand based on the above arguments, it will not address plaintiff's remaining arguments, which the ALJ may consider on remand. *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at \*8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at \*3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at \*17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency either way for the reasons already given . . . the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-CV-606 (JAM), 2019 WL 156934, at \*4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

## V. **Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's cross-motion (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **REVERSED, and the matter REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:  March 4, 2026
       Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge